IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 13 |
| Jennie Marie Moore, | : | |
| Debtor. | : | Case No. 08-17698(JKF) |
| | | |
| Jennie Marie Moore, | : | |
| Plaintiff, | : | |
| v. | : | |
| PHH Mortgage Coporation d/b/a Coldwell Banker Mortgage, | : | |
| Defendant. | : | Adversary No. 09-0054 |

## MEMORANDUM OPINION

BY:  JEAN K. FITZSIMON
     United States Bankruptcy Judge

Before the Court is a motion for summary judgment (the "Motion") by plaintiff/debtor, Jennie Marie Moore ("Debtor"). Debtor contends that she should be granted summary judgment in this adversary proceeding because the proof of claim filed by defendant, PHH Mortgage Corporation ("PHH"), is precluded, pursuant to the doctrine of res judicata, by a state court order (the "Order"), dated April 12, 2005, which quieted title to the property located at 6232 Samson Street, Philadelphia, Pennsylvania (the "Property") in her. At the hearing on the Motion, both parties presented oral

argument. At the conclusion of their arguments, the Court took the matter under advisement. After consideration, the Motion shall be denied.

## BACKGROUND

PHH d/b/a Coldwell Banker Mortgage is a corporation existing under the laws of one of the states of the United States.[1] According to PHH, it loaned the sum of $51,500 to Abdul Muhammad ("Muhammad") on May 7, 2004, in connection with his purchase of the Property.[2] As security for the loan, Muhammad granted a mortgage ("Mortgage") on the Property to Coldwell Banker Mortgage.[3] The deed transferring title of the Property to Muhammad and the Mortgage were executed at approximately the same time, on May 20, 2004 and May 27, 2004, and were recorded on July 16, 2004.[4]

On November 21, 2008, Debtor filed a bankruptcy case under Title 13 of the Bankruptcy Code. PHH subsequently filed a proof of claim and then an amended proof of claim ("Amended Proof of Claim") in Debtor's bankruptcy case. In the Amended Proof of Caim, PHH asserts a secured claim against the Debtor for $79,167.45 and a pre-petition arrearage claim for $36,705.47.[5] On its Amended Proof

---

[1] Plaintiff's Statement of Material Facts in Support of Motion for Summary Judgment as to Which Movant Contends There is No Genuine Issue To Be Tried ("Plaintiff's Statement of Facts") ¶ 1; Answer of PHH Mortgage Corporation to Plaintiff's Statement of Material Facts ("PHH"s Answer to Plaintiff's Statement of Facts") ¶ 1.

[2] Affidavit of Deborah Johnson in Opposition to Motion for Summary Judgment ("Johnson Affidavit") ¶¶ 2-3. The Johnson Affidavit is in the Appendix of PHH Mortgage Corporation in Opposition to Motion for Summary Judgment ("PHH's Appendix") at A52 - A54.

[3] Johnson Affidavit ¶ 6.

[4] Plaintiff's Statement of Facts ¶19; PHH's Answer to Plaintiff's Statement of Facts ¶19.

[5] Plaintiff's Statement of Facts ¶ 2; PHH"s Answer to Plaintiff's Statement of Facts ¶ 2.

of Claim, PHH states that its claim is secured by real estate of "unknown value."[6]

PHH bases its Amended Proof of Claim on the Mortgage, a copy of which it attached thereto.[7] At the top of page 4 of the Mortgage is a paragraph, titled "Borrower's Covenants," which provides as follows:

> BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.[8]

The Mortgage also contains a paragraph titled "Protection of Lender's Interest in the Property and Rights Under this Security Instrument One Resources." This paragraph provides in relevant part:

> If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument . . . then Lender may do and pay for whatever is reasonable and appropriate to protect Lender's interest in the Property and rights under this Security Agreement . . . Lender's actions can include, but are not, limited to . . . (b) appearing in court; and (c) paying reasonable attorneys

---

[6] Plaintiff's Statement of Facts ¶2; PHH"s Answer to Plaintiff's Statement of Facts" ¶2.

[7] Plaintiff's Statement of Facts ¶5; PHH's Answer to Plaintiff's Statement of Facts ¶5.

[8] Plaintiff's Statement of Facts ¶6; PHH's Answer to Plaintiff's Statement of Facts ¶6.

>     fees to protect its interest in the Property and/or rights under
>     this Security Instrument. . . .

Mortgage ¶9.[9]

Both parties agree that Debtor never borrowed any money from PHH, never entered into any contract with PHH and never received any consideration of any kind from PHH.[10] They also agree that Debtor never gave PHH any security interest in her home or in any real or personal property owned by her.[11] However, PHH denies that Debtor owned the property at the time the Mortgage was given to PHH or that Debtor was required to participate in the mortgage transaction in order for PHH to obtain a valid mortgage lien on the Property.[12]

On or about November 10, 2004, Muhammad filed an ejectment action (the "Litigation") in state court against Debtor and others seeking to obtain possession of the Property.[13] In his complaint, Muhammad alleged, in pertinent part:

> 9.  On or about May 20, 2004, plaintiff, Abdul A. Muhammad, purchased the property located at 6232 Samson Street, Philadelphia, Pennsylvania 19139[.]
>
> 10. On the said date of May 20, 2004, I entered the property located at 6232 Samson Street,

---

[9] Plaintiff's Statement of Facts ¶ 10; PHH's Answer to Plaintiff's Statement of Facts ¶ 10.

[10] Plaintiff's Statement of Facts ¶ 3; PHH's Answer to Plaintiff's Statement of Facts ¶ 3.

[11] Plaintiff's Statement of Facts ¶ 4; PHH's Answer to Plaintiff's Statement of Facts ¶ 4.

[12] PHH's Answer to Plaintiff's Statement of Facts ¶ 4; Johnson Affidavit ¶ 4.

[13] Plaintiff's Statement of Facts ¶ 11; PHH's Answer to Plaintiff's Statement of Facts ¶ 11.

4

> Philadelphia, Pennsylvania 19139 but found
> the defendants were residing at the property.
>
> 11. I asked the defendants to vacate the property
> however said defendants still continued to
> reside at the residents.
>
> 12. I have made several requests for the
> defendants to vacate the property but
> defendants have not left the premises.

Civil Action Complaint, 3R Ejectment.[14]

In response to Muhammad's complaint, Debtor filed an answer with new matter and a counterclaim ("Counterclaim"). In the Counterclaim, Debtor asked the state court, among other things, for an order quieting title to the Property in her favor.[15] Debtor did not join PHH as a party to the Litigation.[16]

Muhammad did not answer or otherwise respond to Debtor's Counterclaim so she filed a motion for a default judgment.[17] On April 12, 2005, the state court issued the Order granting judgment in favor of Debtor and against Muhammad.[18] In the Order, the state court also ruled, in pertinent part, that:

> Plaintiff [referring to Muhammad] and all persons claiming
> under him, is forever barred from asserting any right, lien,
> title or interest in the premises identified as 6232 Samson
> Street, Philadelphia, Pennsylvania, . . . and that title to the

---

[14] Appendix to Plaintiff's Motion ("Plaintiff's Appendix") at A62 - A65.

[15] Plaintiff's Statement of Facts ¶ 12; PHH's Answer to Plaintiff's Statement of Facts ¶ 12.

[16] Plaintiff's Appendix at A66 - A77, A78 - A80.

[17] Plaintiff's Appendix at A79- A80.

[18] Plaintiff's Statement of Facts ¶ 13; PHH's Answer to Plaintiff's Statement of Facts ¶ 13.

> Property be quieted in the Defendant [referring to the
> Debtor] against all claims of Plaintiff [referring to
> Muhammad] and all persons claiming under him.

Order, dated April 12, 2005.[19] The Order was not appealed and is a final order.[20]

According to PHH, it was not aware: (i) of the Litigation which Muhammad filed; (ii) of the answer with new matter and the Counterclaims which Debtor filed; or (iii) that Debtor "sought to divest PHH"s mortgage from the property until well after the Litigation was completed.[21] PHH submits that, had it been provided notice of the claims being made by Debtor in the Litigation, it "would have sought to intervene" in the action "to protect its mortgage lien on the [P]roperty."[22]

Notably, within approximately two months after the Debtor filed her bankruptcy case, PHH filed a motion for relief from the stay to proceed with a pre-petition action which it had filed against Debtor in state court seeking a declaration that PHH "is the holder of a valid first mortgage" on the Property and that Debtor's "right, title and interest" in the Property is subject to PHH's mortgage.[23] Concluding that it was too

---

[19] Plaintiff's Appendix at A79 - A80.

[20] Plaintiff's Statement of Facts ¶ 14; PHH's Answer to Plaintiff's Statement of Facts ¶ 14.

[21] Johnson Affidavit ¶¶ 8-12.

[22] Johnson Affidavit ¶ 13.

[23] Motion of PHH Mortgage Corporation d/b/a Coldwell Banker Mortgage for Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362(d) to Proceed with State Court Action, Docket Entry No. 22, in Bankruptcy Case No. 08-17698.

early in the case to determine whether relief should be granted, this Court denied the motion without prejudice. The state court action against the Debtor is still pending.[24]

**DISCUSSION**

### I. Standard of Review

Federal Rule of Civil Procedure 56(c) "sets forth the standard for summary judgment and states that summary judgment shall be granted only if 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Smith v. Johnson and Johnson, 593 F.3d 280, 284 (3d Cir. 2010) (*quoting* Fed.R.Civ.P. 56(c)). A motion for summary judgment will not be defeated by the mere existence of some disputed facts, but will be defeated when there is a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). A genuine issue exists when the "evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." Id. at 248.

In deciding a motion for summary judgment, it is not the court's role to (i) "weigh the evidence to determine the truth of the matter" and decide which is more probative; or (ii) make credibility determinations. American Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. Sept. 11, 2009). Rather, the court must consider the evidence and all reasonable inferences in the light most favorable to the non-moving party. Robinson v. Matthews International Corp., 2010 WL 763869, at *2 (3d Cir. March 8, 2010). If a conflict arises between the evidence presented by both sides, the

---

[24] Transcript, dated January 25, 2010 ("Transcript"), at 37.

court must accept as true the allegations of the non-moving party, and "all inferences must be drawn" in its favor. American Eagle Outfitters, 584 F.3d at 581.

The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corporation v. Catrett, 477 U.S. 317, 323 (1986). If the moving party meets its burden, then "the nonmoving party must set forth 'specific facts showing that there is a genuine issue for trial' or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law." Zahavi v. The PNC Financial Services Group, Inc., 2009 WL 904699, at *6 (W.D. Pa., March 31, 2009) (*quoting* Matsushita Elec. Indus. Corp. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed.R.Civ.P. 56(e))).

## II. Debtor's Motion

As stated above, Debtor contends that PHH is barred from asserting a proof of claim in her bankruptcy case based on the Order which quieted title to the Property in her and "against all claims of [Muhammad] and all persons claiming under him." Memorandum in Support of Plaintiff's Motion for Summary Judgment Based on April 12, 2005 Common Pleas Court Order and Doctrine of Res Judicata ("Debtor's Memorandum") at 5 (*quoting* Order). Debtor contends that the Order applies to PHH pursuant to the law of res judicata. Id. at 6.

8

### III. Principles of Res Judicata

Federal common law has its own set of principles regarding res judicata but when the decision allegedly precluding a later action was issued by a state court, the federal courts apply the preclusion principles developed by that state. Randall v. Bank One National Association as Trustee (In re Randall), 358 B.R. 145, 164 (Bankr. E.D. Pa. 2006).[25] Since the Order was issued by the state court in Pennsylvania, Pennsylvania state law on the issue of res judicata applies here.

Under Pennsylvania law, "when a final judgment on the merits exists, a future suit between the parties on the same cause of action is precluded."[26] Henion v. W.C.A.B. (Firpo & Sons, Inc.), 776 A.2d 362, 365-66 (Pa. Commw. 2001); see also Marshall v. Fenstermacher, 388 F. Supp.2d 536, 564 (E.D. Pa. 2005) (citation omitted) (observing that under the law of res judicata in Pennsylvania, a final judgment on the merits by a court of competent jurisdiction bars any future action between the parties or their privies in connection with the same cause of action). For res judicata to apply, the following four elements must be present: (1) identity of the thing sued upon or for; (2) identify of the cause of action; (3) identity of persons and parties or their privies to

---

[25] Pursuant to the Full Faith and Credit Act, a federal court is required to give state court judicial proceedings "the same full faith and credit . . . as they have by law or usage in the courts of such State . . . from which they are taken." 28 U.S.C. § 1738.

[26] PHH incorrectly argues that res judicata does not apply because the Order was entered pursuant to the Debtor's motion for default judgment. The rule in Pennsylvania is that a default judgment is a valid and final adjudication on the merits and therefore has res judicata effect barring future litigation." Easley v. New Century Mortgage Corp., 2009 WL 2256692, at *2 n.6 (E.D. Pa. July 28, 2009).

the action; and (4) identity of the capacity of the parties suing or sued. Yamulla Trucking & Excavating Company, Inc. v. Justofin, 771 A.2d 782, 784 (Pa. Super. 2001).

Here, the parties' dispute focuses on the third requirement. Debtor contends that PHH's relationship with Muhammad, as the holder of a mortgage on property purportedly owned by him, placed PHH in privity with him at the time he filed the Litigation and when the Order was issued. See Debtor's Memorandum at 7-14. Debtor further argues that PHH and Muhammad were in privity because PHH had the right to control the Litigation, the right to intervene in it and the right to appeal. See Transcript, dated January 25, 2010 ("Transcript"), at 7-8. In support of the argument that PHH was in privity with Muhammad because it had the right to control the Litigation, Debtor cites Stonecipher v. Keane, 112 A. 233, 235 (Pa. 1920). See, e.g., Transcript at 7.

PHH disagrees. It contends that, even though PHH and Muhammad had a mortgagee/mortgagor relationship, that relationship "did not establish the type of privity required for res judicata to exist." Memorandum of Law in Opposition to Motion for Summary Judgment ("PHH's Memorandum") at 9. PHH also asserts that it was unable to intervene in the Litigation or file an appeal from the Order since: (1) it did not have any knowledge of the Litigation until after the Order was entered; and (2) it was not a party to the Litigation. Id. at 12-14. PHH further argues that the issue of whether it had the right to control the Litigation is not relevant in determining whether res judicata applies, asserting that the relevant factor is whether it actually controlled the Litigation. Id. at 10-11; Transcript at 17-18. Lastly, PHH contends that in Stonecipher, supra (which ironically the Debtor cites to support her position), the Pennsylvania Supreme Court specifically rejected the argument which the Debtor is making and held that the

10

holder of a mortgage is not bound by a decision issued against the mortgagor in an ejectment action initiated after the mortgage was recorded. Based on Stonecipher, PHH contends that this Court must rule in its favor.[27]

### IV. Stonecipher

PHH is correct that Stonecipher governs the disposition of this matter. In Stonecipher, there was a piece of real property located in Pittsburgh that was originally owned by Mr. and Mrs. Wilson. In 1905, the Wilsons sold the property to William Keane. However, in 1907, the Wilsons conveyed the same property to Archibald McGrew. In 1913, McGrew conveyed the property to Marie Kelly and, on the same day, she gave a bond and mortgage on the property to Stonecipher. The mortgage was immediately recorded. In 1918, the property was sold by the sheriff (by virtue of a judgment entered on the bond to Stonecipher). Stonecipher bought the property at the sheriff's sale. He thereupon filed an ejectment action against Keane who was in possession of the property as the result of an ejectment action which he had previously filed against Kelly. In Keane's ejectment suit against Kelly, Stonecipher appeared as an attorney and as a witness. Keane won the suit and obtained possession of the property from Kelly. In the ejectment action which Stonecipher filed, Keane sought to use the judgment which he had won in his ejectment action against Kelly as res judicata to preclude Stonecipher's suit against him. The trial court rejected the res judicata

---

[27] PHH also argues that its due process rights will be violated if it is barred from proceeding with its proof of claim against the Debtor based on the Order which was issued in the Litigation since it had no notice of the Litigation while it was pending and the lack of notice can be directly attributed to Debtor's failure to provide such notice. This issue shall not be addressed given the Court's ruling on PHH's argument on whether res judicata applies.

11

argument. The Pennsylvania Supreme Court agreed with the trial court, reasoning that res judicata did not apply because there was *not* "an identity of parties" in the suits. 268 Pa. at 546, 112 A. at 235. Expounding on its ruling, the court stated:

> The Stonecipher mortgage was on record and he was not named as a defendant with Miss Kelly, nor did he intervene or become such; and the fact that he appeared as attorney and witness did not render him a party to the suit nor give him control over it. **To be concluded by the judgment, one must be a party to the suit, or what is equivalent thereto . . . with a right to control the proceedings and take an appeal. A mortgagee is not concluded by a recovery against the mortgagor in an action of ejectment brought by a third party after the recording of the mortgage.**

Id. (citations omitted) (emphasis added). Quoting from a treatise, the Pennsylvania Supreme Court further explained:

> "A judgment against a mortgagor of realty, rendered prior to the execution of the mortgage, binds the mortgagee as a privy and is conclusive upon him; but **a mortgagee is not bound by any proceedings against his mortgagor which were not begun until after the execution of the mortgage, unless he was made a party thereto.**"

268 Pa. at 546, 112 A. at 235 (*quoting* 23 Cyc. 1260) (emphasis added).

Applying the Pennsylvania Supreme Court's ruling in Stonecipher, PHH prevails. It is not bound by the Order since: (1) PHH's mortgage was executed and recorded prior to the commencement of the Litigation; and (2) PHH was not a party to the Litigation. Debtor's argument that PHH had the right to control the Litigation pursuant to the terms of the Mortgage is irrelevant in light of the fact that PHH was not a party to the Litigation. See Stonecipher, supra, 268 Pa. at 546, 112 A. at 235 ("To be concluded by a judgment, one must be a party to the suit, or what is equivalent thereto . . . with a right

12

to control the proceedings and take an appeal.").[28] Also, while PHH may have had a right to intervene in the Litigation, it had no obligation under the Mortgage to do so.[29] Moreover, since PHH was not a party to the Litigation, it could not file an appeal from the Order. See Rohm and Haas Company v. Lin, ___ A.2d ___, 2010 WL 685770, at

---

[28] A more recent case which the Supreme Court of Pennsylvania decided, namely Albert v. Lehigh Coal and Navigation Company, 431 Pa. 600, 246 A.2d 840 (1968), also supports PHH's position that the Motion should be denied. In this case, the Pennsylvania Supreme Court evaluated the effect that a prior quiet title action had on a subsequent quiet title action involving a party that had a significant interest in the property at the time of the first action. In issuing its ruling, the Supreme Court relied upon its decision in Stonecipher.

In Albert, the property in dispute (the "Lehigh Property") was originally owned by the Lehigh Coal and Navigation Company ("Lehigh"). See id. at 603, 246 A.2d at 842. Lehigh properly paid taxes on its property but the taxes were incorrectly credited to a different tract of land. As a result, the tax records showed a nonpayment of taxes owed on the Lehigh Property for 1868 and 1869. To remedy the nonpayment of taxes, the county treasurer sold the property at a tax sale to the county commissioners. See id. The county commissioners thereafter sold the property, also at tax sale, to a third party named S.S. Winchester. Six days after the auction, Lehigh attempted to redeem its property by again paying the 1868 and 1869 taxes. See id. Winchester responded by filing a mandamus action against the county to compel it to execute and deliver the deed for the Lehigh Property to him. Significantly, Lehigh was not made a party to, and did not intervene in, the mandamus action. Winchester ultimately obtained relief in his favor in the mandamus action. The court issued a decree (the "1879 Decree") requiring the deed to the Lehigh Property to be delivered to Winchester which was done. See id. Winchester subsequently died and the Lehigh Property, after a series of conveyances, sold in 1958 to appellants, George Albert and Thomas Moore, who sought to have title to the Lehigh Property quieted in their names and against Lehigh. The trial court ruled against the appellants and in favor of Lehigh.

On appeal, the Pennsylvania Supreme Court affirmed the decision of the trial court. In so ruling, the Supreme Court held that the 1879 Decree *did not* bind Lehigh because he was not made a party to and did not intervene in the mandamus proceeding. Based on these "circumstances," the Pennsylvania Supreme Court held: "[T]he decree did not bind Lehigh *in any manner whatsoever*. To be concluded by a prior decree or judgment, one must be a party to the action, or what is equivalent thereto with a right to control the proceedings or take an appeal: Stonecipher v. Keane, 268 Pa. 540, 546, 112 A. 233 (1920)." 431 Pa. at 613, 246 A.2d at 846 (emphasis added).

[29] The evidence in the record, when viewed in the light most favorable to PHH, shows that it did not have knowledge of the ejectment action or Debtor's counterclaims therein until after the Order had been granted in Debtor's favor. Johnson's Affidavit ¶¶ 8-12.

13

*14 (Pa. Super. March 1, 2010) (opining that only a party has standing to appeal a trial court's final order).

### V.  Relevant Supreme Court Precedent

Significantly, this matter is also controlled by the United States Supreme Court's decision in Chase National Bank v. City of Norwalk, 291 U.S. 431 (1934). While neither party cited to this case, it dictates the outcome of this Court's ruling.

In City of Norwalk, the property at issue was owned by the Ohio Electric Power Company. The property, interestingly, was the electric light and hearing system which was then serving residents of the City of Norwalk. Id. at 432-33. By a duly recorded mortgage deed, the power company transferred the property to a trustee to secure an issue of bonds. Id. at 433. Thereafter, Norwalk's city council passed a resolution requiring the power company to remove its poles, wires and other electrical equipment from the streets, alleys and other public places within 30 days. The power company refused to comply with the city's demand. Id. Thereafter, the state brought an action in quo warranto, in state court, against the power company to oust it from using the streets, alleys and public places for its purposes. Id. The state did not name the trustee as a party to the action and the trustee did not seek to intervene. Id. The state court decided against the power company and entered a judgment of ouster against it. Id. Before any effort was made by the state to enforce the judgment of ouster, the trustee under the mortgage deed of trust, brought suit in federal court to prevent the

14

judgment of ouster from being enforced. Id. at 434. The district court ruled in favor of the trustee and issued an injunction granting the relief which the trustee had sought. Id. at 434-35.

On appeal, the Supreme Court addressed the issue of whether the federal court was bound by the state court's judgment of ouster. Id. at 437-38. It concluded that, "under well-settled principles of jurisdiction, governing all courts," that the federal court was not bound by the state court's judgment of ouster. Id. at 438. Explaining its ruling, the Supreme Court stated:

> [A] decree against a mortgagor with respect to property does not bind a mortgagee whose interest was acquired before the commencement of the suit, unless he was made a party to the proceedings. For in every case where a mortgage was given before the litigation against the mortgagor was instituted, the mortgagee is entitled to have a decision determining his rights rendered on the basis of the facts and considerations adduced by him.

Id.[30]

---

[30] In Lambert Inc. v. Starbrand Sales Corp., 422 F.2d 621 (7th Cir. 1970), the Seventh Circuit Court of Appeals applied the Supreme Court's decision in City of Norwalk to reject the defendant's argument, which was based (as in the instant case) on the law of res judicata, that the plaintiff-mortgagee was bound by a state court decree rendered in proceedings in which the mortgagee was not a party. After providing a summary of the facts and ruling in City of Norwalk, the Seventh Circuit aptly observed:

> While the Supreme Court in Norwalk did not expressly so state, it is implicit in its reasoning that there was no privity between the mortgagee and mortgagor in that case.

422 F.2d at 623.

Under the Supreme Court's ruling in the City of Norwalk, the Order does not bind PHH because it was not made a party to the Litigation. PHH is entitled to have its day in court before being deprived of any interest and/or right it may have in the Property. Using the Supreme Court's words, PHH is entitled to "have a decision determining its rights rendered on the basis of the facts and considerations *adduced by [it]*."[31]

### VI. Relief from the Stay

As is noted above, PHH filed a motion for relief from the automatic stay shortly after Debtor filed her bankruptcy case. The motion was denied without prejudice. Since the Court has now concluded that PHH is not bound by the Order and PHH's state court action against the Debtor is still pending, see Transcript at 37, it would be an appropriate time for PHH to seek relief from the stay to continue with its state court action. According to PHH's counsel's representation, the state court action against the Debtor was on the verge of trial when Debtor filed her bankruptcy case. See Transcript at 23 ("We filed a proceeding in state court against Ms. Moore, seeking a determination . . . that we are not bound by that prior order. That case went all the way to the weekend before trial. . . . The Friday or so before trial, Ms. Moore filed a bankruptcy."). Assuming the accuracy of this representation, it would seem to behoove this Court, should PHH file a motion for relief from the stay, to conserve judicial resources by

---

[31] The evidence in the record on summary judgment indicates that there are disputed issues of fact regarding the chain of title of the Property. See Transcript of Deposition of Shawn Nix, dated April 27, 2006 and Transcript of Deposition of Thomasina Roberts, dated April 10, 2006, both of which are included in PHH"s Appendix. Since the Order was issued in response to Debtor's motion for a default judgment, these issues regarding the chain of title to the Property were never litigated.

granting PHH relief from the stay to proceed with its state court action to resolve the dispute of whether PHH has a mortgage lien on the Property.

## SUMMARY

For the reasons stated, the Motion shall be denied. An appropriate Order shall be issued.

Dated: May 10, 2010.

_____
JEAN K. FITZSIMON
United States Bankruptcy Judge

Copies to:

Irwin Lee Trauss, Esquire
Philadelphia Legal Services
42 South 15th Street, Suite 500
Philadelphia, PA 19102

Edward J. Hayes, Esquire
Fox, Rothschild, O'Brien & Frankel
2000 Market Street, 10th Floor
Philadelphia, PA 19103